UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| COTR, INC. and BRANDCORE, LTD,<br><br>        Plaintiffs,<br><br>v.<br><br>XR BRANDS, INC.<br><br>        Defendant. | Civil Action No.:<br><br><br>(JURY TRIAL DEMANDED) |

**COMPLAINT**

Plaintiffs COTR, Inc. and Brandcore, Ltd. (collectively "COTR") by their attorneys, hereby complain of Defendant XR Brands, Inc. ("XR Brands") as set forth below.

**JURISDICTION AND VENUE**

1.    This is an action for trademark infringement (i.e., trade dress) and unfair competition under federal law and the laws of the State of New York. This Court has jurisdiction over the federal claim of this action pursuant to 28 U.S.C. §§ 1331 and 1332 and further pursuant to its supplemental jurisdiction under 28 U.S.C. §1367. The state claim asserted herein are so related to the federal claims as to form part of the same case or controversy.

2.    This action arises from XR Brands' use, sale, offer for sale, and/or importing of products, and conduct of activities, that infringe COTR's trademark, and specifically its trade dress.

3.    This Court has personal jurisdiction over XR Brands in that it has engaged in acts constituting doing business in the State of New York, including in this judicial

district and have intentionally directed its tortious activities toward the State of New York, including this judicial district. Upon information and belief, XR Brands has committed acts of intellectual property infringement in New York, including this judicial district, by offering for sale the accused products into the stream of commerce with the expectation that they will be purchased by consumers in the State of New York, including this judicial district.  Upon information and belief, XR Brands has offered for sale products, including products that are the subject of this Complaint, to consumers in the State of New York, including this judicial district.

4. Venue is proper in this district in that XR Brands is a corporation subject to personal jurisdiction within this judicial district, and deemed to reside in this district, pursuant to 28 U.S.C. §§ 1391(b) - (d), and in that XR Brands has committed acts of infringement in this district.

## THE PARTIES

5. Brandcore Ltd. is a company organized and existing under the laws of the British Virgin Islands.  Its address is P.O. Box 438, Palm Grove House Road, Town Tortola, British Virgin Islands.  Brandcore Ltd. is the owner of intellectual property including the trademarks and trade dress that are pertinent to this lawsuit.

6. COTR, Inc., an affiliate of Brandcore Ltd., is a corporation organized and existing under the laws of the State of Delaware, and having a principal place of business at 37 West 39th Street, Suite 601, New York, New York 10018.  COTR is the manufacturer, importer and distributor of the uniquely designed products at issue sold under the b-vibe brand.

7. Upon information and belief, XR Brands is organized and existing under the laws of the State of California and has a place of business at 15251 Pipeline Lane, Huntington Beach, California 92647.

## FACTS

### XR BRANDS' INFRINGEMENT OF COTR'S TRADEMARK RIGHTS

8. In October 2015, COTR began soliciting orders for its b-Vibe Rimming Plug device ("Plug"). Included as part of the uniquely designed Plug was a uniquely designed remote control a uniquely designed Plug charger, and a uniquely designed case. In January 2016, COTR shipped its first orders of the Plug, its remote control, charger and case.

9. In the Summer 2017, COTR introduced the b-Vibe Rimming Plug 2 device ("Plug 2"). *See,* Exhibit 1. The device includes the uniquely designed remote control, Plug 2 charger, and case (the "Plug," the "Plug 2" and their respective remote controls, chargers, and cases hereinafter known as "the Plug Products"). *See,* Exhibit 1.

10. COTR's The Rimming Plug Petite, having the same unique design as the Plug and Plug 2 (but smaller), was introduced in October 2017.

11. From that time of the introduction of the Plug Products, COTR has continuously and exclusively sold the Plug Products in interstate commerce throughout the entire United States and abroad. The sales of Plug Products, including use of their associated product designs, legally accrue trademark and trade dress rights to COTR. COTR's continuous and exclusive trademark use on such products commenced well before

XR Brands adopted their infringing trademark and product, and COTR's use has continued to the present.

12. On or about January 8, 20018, at the AMME show in Burbank, California, XR Brands offered for sale the infringing product, Rimmers Model R Smooth Rimming Plug ("Rimmers"). Included as part of the Rimmers was a remote control, a charger, and a case (Exhibit 2) (collectively "Rimmers Products").

13. COTR's common law trade dress rights to the design of its Plug Products are distinctive for adult toy products, and has accrued secondary meaning.

14. Brandcore, Ltd. also has a United States design patent pending on its new and novel designs that are seen in its Plug Products. The patent is expected to issue shortly.

15. XR Brands has offered for sale its Rimmer Products.

16. Upon information and belief, XR Brands has also sold its Rimmer Products.

17. Images of the Rimmer Products are attached as Exhibit 2.

18. XR Brands' offer for sale (and any sale) of its Rimmers Products uses COTR's trade dress, for the same type of goods.

19. XR Brands' activities are intended to, and are likely to, cause confusion, and/or to cause mistake or to deceive, as to the affiliation, connection, or association of XR Brands with COTR, and/or as to the origin, sponsorship, or approval of XR Brands' goods by COTR.

20. XR Brands' use of the Rimmers Products' design marks infringes COTR's trade dress of the Plug Products' designs.

21. XR Brands' use of COTR's trade dress is deliberate.

22. XR Brands use of its Rimmers' Products was intended to copy, imitate, or mimic, COTR's trade dress, and its products.

23. XR Brands' use constitutes unfair competition.

24. XR Brands' use constitutes willful infringement.

25. The overall appearance of the design of COTR's Plug Products is protectable, distinctive, non-functional trade dress.

26. COTR's trade dress rights are rights to the characteristics of the visual appearance of its Plug Products.

27. COTR's trade dress rights include rights to the visual appearance of its Plug and Plug 2 (Exhibit 1, first page), which provide the visual appearance of:

   a. a top, middle and bottom portion;

   b. the bottom portion containing an approximately rectangular base, having rounded edges, and an oval portion within the base;

   c. the middle or neck portion being is circular in nature, and which has the smallest diameter in comparison to the other portions; and,

   d. the top portion being approximately circular, and having a diameter that gradually decreases as the top portion progresses toward the tip of the top portion.

28. The combination and arrangement of the design elements set forth above constitute the trade dress of the Plug and Plug 2 products owned by COTR.

29. The Plug and Plug 2 products are also advertised and promoted as having a series of rows of beads in the middle or neck portion of the product (which is just below the surface of the middle or neck portion).

30. COTR's trade dress rights include rights to the visual appearance of their Plug and Plug 2 remote controls (Exhibit 1, second page), which provide the visual appearance of:

  a. an oval or egg-shaped figure;

  b. the oval or egg-shaped figure having an internal circular shape, whose center portion contains an on/off switch.

31. The combination and arrangement of the design elements set forth above constitute the trade dress of the Plug and Plug 2 remote controls owned by COTR.

32. COTR's trade dress rights include rights to the visual appearance of their Plug and Plug 2 chargers (Exhibit 1, third page), which provide the visual appearance of:

  a. a USB cable having a circular portion at one end that mates with the Plug or Plug 2 product, the circular portion having two circular connectors on one side.

33. The combination and arrangement of the design elements set forth above constitute the trade dress of the Plug and Plug 2 chargers owned by COTR.

34. COTR's trade dress rights include rights to the visual appearance of their Plug and Plug 2 packaging (Exhibit 1, fourth page), which provide the visual appearance of:

   a. a generally rigid case in the shape of a rectangle;

   b. the outer surface of the case containing a series of parallel protrusions.

35. The combination and arrangement of the design elements set forth above constitute the trade dress of the Plug and Plug 2 cases owned by COTR.

36. XR has deliberately copied the appearance and trade dress of COTR's products and packaging.

37. COTR's trade dress is not essential to the use or purpose of the Plug and Plug 2 product, their remote controls, chargers or cases.

38. Alternative constructions perform the same adult toy product function as COTR's trade dress.

39. COTR's trade dress is not necessary to achieve the function of the adult toy product, but rather provides an aesthetic appearance designed by COTR.

40. COTR's trade dress is non-functional.

41. COTR has created their designs, including their trade dress, and have extensively marketed, promoted, and sold their products, including their associated trade dress, through extensive time, labor, skill, and money.

42. As a result thereof, COTR's products have been extensively sold throughout the United States, and, have become an extremely popular adult toy design.

43. In addition to being distinctive, COTR's trade dress has acquired secondary meaning, and is recognized as identifying COTR's high-quality products.

44. Buyers widely recognize COTR's trade dress as originating with b-Vibe, a brand of COTR's.

45. COTR's trade dress has also been the subject of repeated unsolicited media coverage. Such coverage has included articles in numerous magazines, including, but not limited to, StorErotica and Modern Emotion.

46. COTR's trade dress has also been the subject of sales success. COTR has had sales of millions of dollars in products bearing COTR's trade dress.

47. COTR's trade dress, and goodwill directed to its products, are valuable assets of COTR.

48. Based on: the strong trade dress rights that COTR's has accrued from its extensive and extremely successful use of its designs in commerce; the high degree of similarity between the COTR's trade dress and XR Brands' infringing designs; the lack of a gap between COTR's and XR Brands' products; information and belief as to actual confusion; XR Brands' bad faith in adopting the COTR's trade dress; and/or the nature of the products and purchasers; there is a likelihood of confusion between COTR's common law trade dress, and XR Brands' accused designs.

49. XR Brands' products were introduced to trade off of the good will, secondary meaning, and success that COTR had accrued in COTR's trade dress and products, and in the marketplace.

50. XR Brands use of COTR's trade dress was intended to confuse and mislead customers into believing that their goods originate from, are sponsored by, or are affiliated with COTR's, and that use poses a likelihood of confusing customers into believing that XR Brands' goods originate from, are sponsored by, or are affiliated with COTR's.

**WILLFUL INFRINGEMENT**

51. XR Brands' activities have been and are deliberate and willful.

52. Upon information and belief, XR Brands is aware of COTR's trade dress, and has deliberately chosen to use, sell, and offer for sale, products and use trade dress, intended to copy or imitate the same.

53. Upon information and belief, XR Brands was aware of COTR's trade dress, before introducing them into commerce, but deliberately chose to use, sell, offer for sale, products intended to copy or imitate the same.

54. In the alternative, upon information and belief, XR Brands has engaged in willful blindness regarding COTR's trademark rights, and regarding its accused products' infringement of COTR's trademark rights, and has recklessly chosen to continue to make, sell, offer for sale, use and/or import the accused products.

55. XR Brands chose to infringe COTR's trademark rights despite an objectively high likelihood that its actions constituted infringement of valid trademark rights, with this objectively-defined risk being either known, or so obvious that it should have been known, to XR Brands.

56. XR Brands' actions constitute willful infringement. Such standards, include any current and future standards for willfulness, and for enhanced damages under the applicable law.

57. XR Brands' willful infringement is ongoing.

58. XR Brands, in bad faith, adopted COTR's trade dress.

59. XR Brands' acts have been without license or authority of COTR.

60. XR Brands' bad faith activities have caused and will continue to cause a likelihood of deception and confusion in the marketplace among consumers, and extensive damage to COTR's and their business, goodwill and reputation.

61. XR Brands has illegally profited, and is illegally profiting, from their infringements of COTR's rights.

62. XR Brands' actions have caused and are causing irreparable harm to COTR.

63. COTR has been damaged by XR Brands' activities and will continue to be damaged unless XR Brands is restrained and enjoined by this Court.

64. COTR has no adequate remedy at law.

65. COTR has been damaged by XR Brands' illegal actions in an amount to be determined by a jury and this Court, including recovery and relief for COTR's lost sales, lost profits, price erosion, and damage to COTR's reputation and good will, and/or a disgorgement of XR Brands' revenues and profits.

## COUNT I
## LANHAM ACT TRADEMARK INFRINGEMENT
## AND UNFAIR COMPETITION
## 15 U.S.C. §1125(a)

66. COTR repeats and re-alleges each and every allegation contained in the preceding paragraphs, as if fully set forth herein.

67. This claim arises under the Lanham Act, 15 U.S.C. §1051 et seq.

68. This Court has jurisdiction over this claim pursuant to 28 U.S.C. §§1331 and 1332.

69. XR Brands is intentionally using trade dress which is confusingly similar to COTR's Plug Product designs, in a manner that has caused and is likely to cause confusion,

or to cause mistake, or to deceive as to the affiliation, connection, or association of XR Brands with COTR's, or as to the origin, sponsorship, or approval of XR Brands' goods by COTR.

70. XR Brands' sale and offer for sale of products with trade dress which is confusingly similar to COTR's trade dress, constitutes unfair competition, false designation of origin, and false description and representations, and false advertising, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

71. XR Brands' acts of infringement were and are willful and deliberate.

72. XR Brands has profited from their illegal and bad faith activities.

73. COTR has suffered, and continues to suffer, substantial damages as a result of XR Brands' bad faith activities, in an amount to be determined by the jury and this Court.

## COUNT II
## NEW YORK COMMON LAW OF UNFAIR COMPETITION

74. COTR repeats and re-alleges each and every allegation contained in the preceding paragraphs, as if fully set forth herein.

75. This claim arises under the common law of the State of New York. *See e.g., Luv n' care, Ltd. v. Walgreen Co.*, 695 F. Supp. 2d 125, 135 (S.D.N.Y. 2010).

76. This Court has jurisdiction over this claim pursuant to 28 U.S.C. §1367.

77. COTR has created its trade dress, and has extensively marketed, promoted, and sold their products, including their associated designs, and trade dress, through extensive time, labor, skill, and money.

78. XR Brands has engaged in unfair competition under New York common law by XR Brands' bad faith misappropriation of the labors and expenditures of COTR, which is likely to cause confusion or to deceive purchasers as to the origin of XR Brands' goods.

79. XR Brands has misappropriated business value of COTR, and has misappropriated the results of COTR's labor and skill and the expenditures of COTR, by marketing and selling goods that are confusingly similar to the designs and trade dress of COTR's goods, including COTR's trade dress in those goods.

80. XR Brands has used designs and trade dress that are confusingly similar to that of the COTR Plug Products, for the same type of goods, and have done so in bad faith.

81. XR Brands has used those designs and trade dress, in competition with COTR, gaining an unfair advantage, because XR Brands bore little or no burden of expense of COTR's creation, development, marketing, and promotion of those designs, trade dress, and goods.

82. XR Brands has engaged in bad faith misappropriation of the labors of COTR in its creating, marketing, promoting, and selling of their products bearing its designs, and trade dress, which misappropriation is likely to cause confusion, to deceive purchasers as to the origin of the goods, and to dilute the value of COTR's designs and trade dress and the value of COTR's products bearing the same.

83. XR Brands' bad faith activities are intended to copy or mimic the trade dress associated with COTR's brand, and to copy and mimic the same.

84. XR Brands' actions have caused significant commercial damage to COTR.

85. XR Brands' conduct is illegal and actionable under the common law of unfair competition of the State of New York.

86. COTR has been and continues to be injured by XR Brands' illegal actions and are entitled to the remedies provided under New York law.

## DAMAGES

87. COTR is being irreparably harmed by XR Brands' infringing activities, and has no adequate remedy at law.

88. COTR has been and continues to be extensively damaged by XR Brands' intellectual property infringement in an amount to be determined by a jury and this Court.

89. COTR seeks damages as a result of XR Brands' infringement which include, but are not limited to: COTR's lost sales, lost profits, price erosion, and damage to their reputation and good will; and/or disgorgement of XR Brands' revenues and profits; from XR Brands' sales of infringing products.

90. COTR requests that this honorable Court assess enhanced damages against XR Brands in the fullest amount permissible by law, including, but not limited to, treble damages under federal law and punitive damages under New York law, in view of the willful, egregious, malicious, and extensive nature of XR Brands' bad faith activities complained of herein, and in view of the numerous violations, the willful nature of the violations, and the significant damage to COTR, as set forth above.

91. COTR further requests injunctive relief to bar further acts infringing COTR's rights under federal and/or New York law, absent which the willful violations complained of herein will all continue.

## JURY TRIAL DEMAND

92.     Pursuant to Rule 38, Fed. R. Civ. P., COTR hereby demands a trial by jury on all issues set forth herein that are properly triable to a jury.

## PRAYER FOR RELIEF

WHEREFORE, COTR respectfully requests that the Court, upon final hearing of this matter, grant the following relief against XR Brands:

A.      That XR Brands be adjudged to have engaged in federal unfair competition and trademark infringement under Section 43 of the Lanham Act, 15 U.S.C. §1125, and trademark infringement under the common law of the State of New York.

B.      That XR Brands be adjudged to have engaged in unfair competition under the common law of the State of New York.

C.      That each of XR Brands, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with XR Brands be preliminarily and permanently enjoined from offering for sale, selling or marketing merchandise that copies or imitates any of COTR's trademark rights, including, COTR's trade dress, be preliminarily and permanently enjoined from offering for sale, selling or marketing merchandise that tends in any way to deceive, mislead or confuse the public into believing that XR Brands' merchandise in any way originates with, is sanctioned by, or is affiliated with COTR; and be preliminarily and permanently enjoined from engaging in any activities violating COTR's

rights under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), and the common law of the State of New York;

D. That each of XR Brands, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with XR Brands be preliminarily and permanently enjoined from otherwise competing unfairly with COTR;

E. That each of XR Brands, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with XR Brands be preliminarily and permanently enjoined from engaging in any and all further deceptive and unfair business practices with respect to COTR;

F. That each of XR Brands, its officers, agents, servants, employees, representatives, distributors, and all persons in concert or participation with XR Brands be preliminarily and permanently enjoined from engaging in further acts infringing COTR's rights under federal and/or N.Y. law;

G. That XR Brands be directed to file with this Court and serve on COTR within thirty (30) days after service of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which the XR Brands has complied with the injunction;

H. That XR Brands be required to account for and pay over to COTR any and all revenues and profits derived by it and all damages sustained by COTR by reason of the acts complained of in this Complaint, including an

assessment of interest on the damages so computed, and that the damages be trebled, pursuant to 5 U.S.C. §1117 and all further applicable law;

I. That XR Brands be required to account for and pay over to COTR such actual damages as COTR has sustained as a consequence of XR Brands' infringement; that the damages relating to trademark and trade dress infringement be trebled pursuant to 15 U.S.C. §1117, and that any and all damages likewise be enhanced to the maximum available under all applicable federal and New York law; and that XR Brands be required to account for and pay to COTR all of XR Brands' gains, revenues, profits and advantages attributable to or derived by XR Brands' infringement;

J. That each such award of damages be enhanced to the maximum available for each infringement in view of XR Brands' willful infringement of COTR's rights;

K. That XR Brands be required to deliver up for impoundment during the pendency of this action, and for destruction thereafter, all the infringing materials in its possession or under its control and all materials, including molds and master models, used for making same;

L. That COTR be awarded punitive or exemplary damages under New York law because of the egregious, malicious, and tortious conduct of XR Brands complained of herein;

M. That COTR recover the costs of this action including their expenses and reasonable attorney's fees pursuant to 15 U.S.C. §1117 and all further

applicable law, because of the deliberate and willful nature of the infringing activities of XR Brands sought to be enjoined hereby, which make this an exceptional case warranting such award;

N. That COTR be awarded pre-judgment and post-judgment interest;

O. That COTR obtain all further relief permitted under the laws of the United States and the State of New York; and,

P. That COTR obtain all such other and further relief as the Court may deem just and equitable.

Dated: January 18, 2018

*/s/ Lee A. Goldberg*
Lee A. Goldberg (LG-9423)
Morris E. Cohen (MC-4620)
Limor Wigder (LW-1986)
GOLDBERG COHEN LLP
1350 Avenue of the Americas, 3rd Floor
New York, New York 10019
(646) 380-2087 (phone)
(646) 514-2123 (fax)
LGoldberg@GoldbergCohen.com
MCohen@GoldbergCohen.com
LWigder@GoldbergCohen.com